UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEW MEXICO

In re:

U.S. GLOVE, INC.,                                                                No. 21-10172-t11

      Debtor.

U.S. GLOVE, INC.,

      Plaintiff,

v.                                                                           Adv. No. 21-1009

MICHAEL J. JACOBS,

      Defendant.

## **OPINION**

Before the Court is Plaintiff's motion for summary judgment avoiding, as a preferential transfer, the perfection of Defendant's security interest in Plaintiff's personal property. Defendant more or less concedes Plaintiff's prima facie case but argues that Plaintiff lacks standing to assert the claim because avoiding Defendant's security interest would not benefit creditors. The Court concludes that there are fact issues relating to the standing defense, and therefore will deny the motion.

1.    Facts.

The Court finds that the following facts are not in genuine dispute:

Plaintiff, the debtor in this chapter 11 case, is a New Mexico corporation that manufactures gymnastic grips and wrist supports.

Prior to October 2018, Defendant Michael Jacobs owned 5,000 shares, representing 100%, of Plaintiff's capital stock. On October 18, 2018, Plaintiff redeemed 2,850 shares of stock from

Defendant for $3,390,000. After the redemption, Defendant owned 2,150 shares, or 43% of Plaintiff. On the same date, the following individuals (the "New Stockholders") purchased the following shares of stock from Plaintiff:

| Name | Number of shares | Percentage |
|---|---|---|
| Evan Gobdel | 800 | 16% |
| Greg Bregstone | 800 | 16% |
| Randolph Chalker | 700 | 14% |
| Gaye Gustafson | 550 | 11% |
| Total | 2,850 | 57% |

To pay Defendant for the shares, Plaintiff gave Defendant a $2,140,000 promissory note and a $1,250,000 promissory note. Neither note is guaranteed. The New Stockholders paid Plaintiff essentially nothing for their shares. The transaction appears to be a classic leveraged buyout, pursuant to which Plaintiff assumed $3,390,000 of debt for no exchange consideration.

The larger note includes a security agreement that grants Defendant a security interest in Plaintiff's accounts, inventory, equipment, and other tangible and intangible property (the "Collateral"). The smaller note is unsecured. For unknown reasons, Defendant did not perfect his security agreement in the Collateral for 20 months after the buyout closed.

On May 19, 2020, in the midst of the COVID-19 pandemic, Plaintiff borrowed $150,000 from the Small Business Administration ("SBA"). Repayment of the loan was secured by a security interest in the Collateral. The notes require Defendant to subordinate his security interest to the SBA's security interest, and Defendant has agreed to do so. In addition, Plaintiff obtained a $50,000 Paycheck Protection Program ("PPP") loan from the SBA.

Apparently prompted by this borrowing, on June 1, 2020, Defendant filed a financing statement with the New Mexico Secretary of State, perfecting his security interest in the Collateral. The SBA filed a financing statement on July 8, 2020.

Between February and September 2020, Plaintiff made six payments to Defendant on the senior note, totaling about $137,500 (the "Note Payments").

On June 1, 2020, Plaintiff had assets of about $300,000 and liabilities of about $3,600,000.[1]

Plaintiff filed this case on February 14, 2021. Plaintiff's bankruptcy schedules show Collateral value of about $280,000.

The Court set a bar date in this case for March 26, 2021. Nine proofs of claim were filed, including four by Defendant. Two claims have already been disallowed by default order. The Remaining claims are:

| Claimant | Amount |
| --- | --- |
| Bank of America (PPP loan) | $50,000 |
| Michael Jacobs | $2,140,000 |
| Michael Jacobs | $1,250,000 |
| Michael Jacobs (rent) | $155,000 |
| Michael Jacobs | Equity interest |
| SBA | $149,143 |
| IRS | $2,821 |
| Total | $3,746,964 |

Defendant objected to the PPP loan claim and the IRS claim. At this point, it seems likely that those claims will be satisfied without payment from the estate. Thus, as a practical matter there are two creditors in this case—Defendant, with claims totaling $3,545,000 and the SBA, with a $149,143 claim secured by a first lien on Plaintiff's assets. Defendant represents 95.9% of the claims pool and is the only unsecured creditor.

Defendant filed a motion to dismiss the bankruptcy case on February 22, 2021, arguing that it was filed in bad faith. A final hearing on the motion to dismiss is set for June 30, 2021.

---

[1] The balance sheet lists total assets of about $800,000 and liabilities of about $4,100,000, but both of those figures include a $500,000 "Deferred Success fee" tied to Woodlawn, an entity associated with some of the New Stockholders. The Court is not sure of the nature of this fee, but it appears that the net effect on Plaintiff's balance sheet is $0.

Plaintiff filed this adversary proceeding on March 15, 2021. The complaint contains three counts: to avoid Defendant's financing statement as a preference; to recover the Note Payments as a preference, and to disallow Defendant's claims until he pays the Note Payments to Plaintiff.

Plaintiff filed a Subchapter V plan on February 22, 2021. In the plan Plaintiff proposes to pay Defendant $650,000 as a secured creditor and about an additional $100,000 as an unsecured creditor.

On April 16, 2021, Plaintiff moved for a partial summary judgment avoiding Defendant's security interest in the Collateral.

2.  Summary Judgment Standards.

"A party may move for...[and t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court may look to the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any" in conducting its evaluation of the motion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). If a nonmovant fails to address a movant's assertion of facts, a court may consider those facts undisputed and use them in granting summary judgment if the movant is so entitled. *See* Fed. R. Civ. P. 56(e).

3.  § 547 Preference Actions.

§ 547(b)[2] provides in part:

Except as provided in subsections (c), (i), and (j) of this section, the trustee may . . . avoid any transfer of an interest of the debtor in property--
    (1) to or for the benefit of a creditor;
    (2) for or on account of an antecedent debt owed by the debtor before such transfer was made;
    (3) made while the debtor was insolvent;
    (4) made--

---

[2] All statutory references are to 11 U.S.C. unless otherwise indicated.

     (A) on or within 90 days before the date of the filing of the petition;
or
     (B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and
   (5) that enables such creditor to receive more than such creditor would receive if--
     (A) the case were a case under chapter 7 of this title;
     (B) the transfer had not been made; and
     (C) such creditor received payment of such debt to the extent provided by the provisions of this title.

Section 547(c) lists nine exceptions to the trustee's right to avoid a preferential transfer.

4.  <u>Plaintiff Has Satisfied § 547(b)</u>.

  a.  <u>The security interest encumbering Plaintiff's property was transferred to Defendant</u>. § 101(54) defines "transfer" to include "the creation of a lien." § 547(e)(2)(B) specifies that if a security interest is perfected more than 30 days after it is granted, then the "transfer" is deemed of occur on the date of perfection, rather than the date of grant. *See also In re Hedrick*, 524 F.3d 1175, 1180 (11th Cir. 2008) ("When a transfer is 'made' for § 547(b)(4)(A) purposes depends on when it is perfected.").

  b.  <u>The transfer was on account of antecedent debt</u>. Plaintiff first became obligated to Defendant in October 2018, when the leveraged buyout closed. The "transfer" occurred 20 months later and was on account of an antecedent debt. *See* 5 Collier on Bankruptcy ¶ 547.03[4].[3]

  c.  <u>Plaintiff was insolvent at the time of the transfer</u>. Insolvency for § 547 purposes means the debtor's debts exceed the value of its property. *See* § 101(32). On the date of the transfer

---

[3] "[I]f a security transfer actually made…is not perfected at once or within the statutory grace period, the [transfer] will be deemed 'antecedent to the delayed effective date of the transfer.' The transfer, for the purpose of section 547, will thus be one made 'for or on account of an antecedent debt owed by the debtor before such transfer was made[]'" (footnote omitted).

-5-
Case 21-01009-t Doc 22 Filed 06/11/21 Entered 06/11/21 15:32:41 Page 5 of 16

Plaintiff had about $300,000 in assets and $3,600,000 in liabilities. Plaintiff was "balance sheet" insolvent on June 1, 2020.[4]

d. <u>The transfer occurred within the "insider" preference period</u>. Defendant, an insider of Plaintiff,[5] perfected his security interest in the Collateral on June 1, 2020, about eight and a half months before Plaintiff filed this case and within the one-year "insider" preference period of § 547(b)(4)(B). As noted above, the transfer date is the date of perfection.

e. <u>The transfer enabled Defendant to receive more than if the security interest had not been perfected and Plaintiff were liquidated under chapter 7</u>. If Plaintiff were liquidated under chapter 7 and Defendant was unsecured, the only secured claim would be the SBA's claim for $150,000. After subtracting administrative expenses, Defendant would get the balance as the only unsecured creditor. Defendant might receive $100,000 or less on his $3.55 million claims.

If the transfer is not avoided, on the other hand, Defendant would have a second lien on the collateral and would receive about $130,000, which is more than if he were unsecured. Furthermore, Defendant intends to make the § 1111(b) election. If Plaintiff successfully reorganized, the election would require Plaintiff to pay Defendant $2,140,000 over time, at least 21 times what Defendant would receive as an unsecured creditor in a chapter 7 liquidation.

5. <u>Defendant's Standing Defense</u>.

---

[4] Defendant denied Plaintiff's insolvency in his answer to the complaint, but did not respond to the assertion in the motion. This blanket denial is insufficient to overcome Plaintiff's evidence of insolvency. *See* Fed. R. Civ. P. 56(c)(1).

[5] *See* § 101(31)(B)(i). Defendant, a director of Plaintiff, is a statutory insider.

Defendant does not assert any of the statutory defenses in § 547(c).[6] Instead, he argues that Plaintiff lacks standing to bring the avoidance action because it would not benefit creditors, only itself.[7] Defendant argues that the avoidance powers cannot be invoked unless creditors benefit.

    a.     "Benefit of the estate" under the Act. Under the Bankruptcy Act of 1898 (the "Act"), courts uniformly held that avoidance powers were intended to benefit unsecured creditors and could not be used when the only beneficiary was the debtor. In *Whiteford Plastics Co. v. Chase Nat'l Bank of New York City*, 179 F.2d 582 (2d Cir. 1950), for example, the debtor sought to set aside a bank's security interest in certain generators the debtor owned. Thereafter, debtor's plan of arrangement was confirmed. The plan did not give the benefit of avoiding the bank's lien to creditors. 179 F.2d at 583-84. After confirmation, the bank objected to the debtor's efforts to avoid its security interest, arguing that the debtor would be the only beneficiary. The Second Circuit agreed that lien avoidance benefitting only the debtor was inappropriate:

> So far as the record discloses, the creditors were never informed of the fact that the conditional sale contract was void as to a lienholder prior to the motion of the debtor to set the lien aside shortly before the arrangement came up for confirmation. No creditor then or since appears to have objected to the plan because it did not include the value of the generators, or for any other reasons. The debtor never contributed or offered to contribute this value to the plan and now seeks to obtain it purely for its own benefit. This we think it cannot do. In our opinion the bank, which had a good secured claim as against the debtor, can still hold it where the petition to avoid the sale is not in the interest of the general creditors.

---

[6] Defendant's answer to Plaintiff's complaint states as an affirmative defense that the Note Payments were ordinary course transfers protected from avoidance under § 547(c)(2). That defense is not currently at issue.

[7] This defense is characterized as a standing defense because the courts adhering to the "benefit of the estate" test conclude that if there is no such benefit, the plaintiff had no right or "standing" to bring the claim.

*Id.* at 584. The *Whiteford* court cited an earlier decision from the Seventh Circuit, *In re J.C. Winship Co.*, 120 F. 93 (7th Cir. 1903), which had a similar reaction to an attempt by a debtor to avoid a creditor's lien on certain equipment after all creditors had been paid.

> It would be mockery of justice to say that the alleged bankrupt may claim through and in the right of creditors whose debts have been paid and discharged; that he may avoid a transaction, valid as to himself but voidable as to creditors, in the right of nonexisting creditors.

120 F. at 96. To the same effect is *Vintero Corp. v. Corporation Venezolana de Fomento (In re Vintero Corp.)*, 735 F.2d 740 (2d Cir. 1984), where the Second Circuit questioned the right of a debtor to avoid a creditor's (CVF's) lien on a ship (the Santa Rosa) unless the benefit accrued to the debtor's general unsecured creditors:

> Counsel for Vintero conceded at oral argument that the Santa Rosa may be worth as much as $10 million. If the value of the Santa Rosa were not included as part of Vintero's plan of arrangement so as not to be intended for the benefit of Vintero's creditors, there would be no reason in law or equity for CVF to lose the benefit of its lien. *Whiteford Plastics Co. v. Chase Nat'l Bank, supra,* 179 F.2d at 584.
>
> On the assumption that the Santa Rosa will be sold as part of Vintero's plan of arrangement, we hold that CVF's security interest shall attach to the identifiable proceeds of the sale, but that such security interest shall not entitle CVF to a priority of payment as against Vintero's general unsecured creditors. Such disposition will protect the interests of Vintero's creditors, will recognize the merit of CVF's substantial claim, and will preclude the possibility of Vintero reaping an undeserved windfall.

735 F.2d at 742-43. One Tenth Circuit case, *City Nat'l Bank & Trust Co. v. Oliver*, 230 F.2d 686 (10th Cir. 1956), in on point. In *Oliver* the Tenth Circuit held:

> Another position taken by the bank is that, even if the trustee is vested with the rights of a lien creditor, he cannot avoid the unrecorded mortgage because the mortgaged property is not utilized for the benefit of general creditors. The case of *Whiteford Plastics Co., Inc., v. Chase National Bank*, 2 Cir., 179 F.2d 582, is relied upon to demonstrate that an unrecorded chattel mortgage can be avoided by a trustee in bankruptcy only for the benefit of creditors. It was there held that the debtor in possession in a Chapter XI arrangement proceeding, with powers of a trustee, could not avoid an unrecorded conditional sales contract covering property not included in the arrangement. The court assumed as the basis of its decision that

> the avoidance of the unrecorded contract would benefit the debtor only and was not in the interest of the general creditors. The bank's contention that the *Whiteford* case is controlling authority is based upon the premise that general creditors cannot derive any benefit from the rejection of its claim. That the sole result will be to give the debtor an undeserved windfall.

230 F.2d at 689-90; *see also In re Schwab*, 613 F.2d 1279, 1281 n.2 (5th Cir. 1980) (citing *Whiteford* with apparent approval); *In re Oceana Int'l, Inc.*, 376 F. Supp. 956, 962 (S.D.N.Y. 1974) (bankruptcy court lost jurisdiction of an avoidance action after plan of arrangement was confirmed and recovery would only benefit the debtor, not creditors); *In re Centennial Industries, Inc.*, 12 B.R. 99, 102 (Bankr. S.D.N.Y. 1981) (citing *Whiteford* with approval but distinguishing it); *In re Berg*, 387 B.R. 524, 568 (Bankr. N.D. Ill. 2008) (abrogated on other grounds by *In re Crane,* 742 F.3d 702 (7th Cir. 2013)) ("Under the pre-1978 Bankruptcy Act, avoidance actions could only be maintained if the avoidance benefitted the estate.").

The "benefit to creditors" rule is not based on specific language in the avoidance provisions of the Act, but on a provision in Section 342 of the Act that debtors in possession are "subject . . . at all times to the control of the court and to such limitations, restrictions, terms, and conditions as the court may from time to time prescribe." *See Whiteford*, 179 F.2d at 584.

  b. "Benefit of the estate" under the Code. "Enactment of the Code's avoidance and recovery provisions represented a dramatic departure from its predecessor . . . . Under the Act, each avoidance section contained its own recovery scheme. *See, e.g.,* 11 U.S.C. §§ 67 *et seq.* (repealed). Under the Code, §§ 544, 545, 547, 548, and 549 govern avoidable transfers and § 550 governs whether, and to what extent, such transfers may be recovered." *Weaver v. Aquila Energy Marketing, Corp.*, 196 B.R. 945, 954-55 (S.D. Tex. 1996), aff'd sub nom, 117 F.3d 1417 (5th Cir. 1997). Section 550(a) provides in part:

> [T]o the extent that a transfer is avoided under section 544, 545, 547, 548, 549, 553(b), or 724(a) of this title, the trustee may recover, *for the benefit of the estate*, the property transferred . . . ."

(italics added). There is no similar "benefit of the estate" language in §§ 544-549. Thus, the question the Court must answer is where, as here, a transfer can be avoided without using § 550, is there nevertheless a "benefit of the estate/benefit of creditors" requirement?[8]

        I.        <u>Cases that do not impose a "benefit of the estate" requirement for avoidance actions when § 550 is not used</u>. Several cases have held that there is no "benefit of the estate" requirement for an avoidance action if § 550 is not needed to "recover" an avoided transfer. For example, in *In re Texas Rangers Baseball Partners*, 498 B.R. 679 (Bankr. N.D. Tex. 2013), the bankruptcy court held:

> Specifically, the court finds that the inquiries relevant to a fraudulent transfer action under section 548(a)(1) (*i.e.,* whether a particular obligation incurred by the debtor is subject to ***avoidance***) are materially different than the inquiries related to ***recovery*** under section 550(a) (*i.e.* whether the recovery of specific fraudulently transferred property will result in a benefit to the bankruptcy estate). A number of federal courts that have addressed the specific issue of whether avoidance of a transfer/obligation (as opposed to affirmative recovery on a transfer/obligation) requires a showing that avoidance must demonstrably benefit the estate have found that it does not.

498 B.R. at 708 (footnote omitted). *See also In re Coleman*, 426 F.3d 719 (4th Cir. 2005):

---

[8] If an action combines avoidance (under, e.g., §§ 544, 547, or 548) with recovery under § 550, the "benefit to the estate" requirement applies. *See, e.g., Wellman v. Wellman,* 933 F.2d 215 (4th Cir. 1991), *cert. denied,* 502 U.S. 925 (1991) (debtor may not recover avoided property pursuant to § 550 unless it would benefit creditors, not the debtor); *In re New Life Adult Medical Day Care Center, Inc.*, 2014 WL 6851258, at *6 (Bankr. D.N.J.) (granting summary judgment to defendant because the avoidance action would only benefit the owner of the debtor, not creditors); *In re Fisher,* 296 Fed. App'x. 494, at 504-05 (6th Cir. 2008) (unpublished); *In re Murphy*, 331 B.R. 107, 122 (Bankr. S.D.N.Y. 2005); *DSI Renal Holdings, LLC*, 2020 WL 550987, at *6 (Bankr. D. Del.); *In re Texas General Petro. Corp.,* 52 F.3d 1330, 1335 (5th Cir. 1995) (primary concern is whether a successful recovery would benefit the debtor's estate and particularly the debtor's unsecured creditors); *In re Crowthers McCall Pattern, Inc.*, 120 B.R. 279, 288 (Bankr. S.D.N.Y. 1990) ("a transaction can be avoided under section 544(b) only to the extent the avoidance benefits unsecured creditors").

> [T]the Bank contends that, like property recovery, transfer avoidance could be limited to the extent necessary to benefit the creditors and pay the administrative expenses of the estate. We do not accept this assertion. In the absence of equivalent language in § 544, the presence of the phrase 'for the benefit of the estate' in § 550 merely highlights the fact that Congress knew how to include such a limitation when it wanted to.

426 F.3d at 725.

For cases that distinguish between the avoidance sections and § 550 for other reasons, see *In re Burns,* 322 F.3d 421, 427 (6th Cir. 2003) (holder of mortgage avoided under § 544(a) was not entitled to a § 550(e) "recovery lien" because the trustee did not seek recovery under § 550); and *Berg*, 387 B.R. at 569 (citing and following *Burns*).

    II.  <u>Cases that impose a "benefit of the estate" requirement for avoidance actions when § 550 is not used</u>. Other cases decided under the Code use the "benefit of the estate" test for avoidance actions even if § 550 is not part of the claim. In *Dunes Hotel Assoc. v. Hyatt Corp.*, 245 B.R. 492 (D.S.C. 2000), the district court addressed whether the debtor could avoid Hyatt Hotel's unrecorded lease under § 544(a). Hyatt was the only creditor in the case, while the obvious beneficiary of the avoidance action would be the debtor. The court first acknowledged that "a literal application of the pertinent Bankruptcy Code provisions would permit Dunes as debtor-in-possession to avoid Hyatt's leasehold interest and obtain possession of the hotel without ever triggering § 550's benefit of the estate analysis." *Id.* at 505. The court then ruled:

> However, the policies of the Bankruptcy Code mandate that this court frustrate Dunes's attempts to avoid Hyatt's leasehold interest under the unique circumstances of this case. "The plain meaning of legislation should be conclusive, except in the 'rare cases [in which] the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters.'" *United States v. Ron Pair Enters., Inc.,* 489 U.S. 235, 242, 109 S. Ct. 1026, 103 L. Ed. 2d 290 (1989) . . . .

245 B.R. at 505. The court held that permitting the debtor to "use the strong-arm provisions of § 544(a) to create a windfall for itself and its equity holder in derogation of the interest of Hyatt,

the only remaining non-insider creditor, is contrary to the purpose of the avoidance powers. . . ." *Id.* at 507.

In *Adelphia Recovery Trust v. Bank of America*, 390 B.R. 80 (S.D.N.Y. 2008), aff'd, 379 Fed. App'x 10 (2d Cir. 2010), the district court dismissed fraudulent transfer claims brought by plaintiff ART for lack of standing because the creditors had been paid in full and would not benefit from any recovery. *Id.* at 97. The district court relied on *Whiteford Plastics* and *Vintero* in its ruling. In response to the trustee's argument that those cases were decided under the Act rather than the Code, the court stated:

> However, the ART has failed to point to any substantive differences between the old and new avoidance provisions that would render this case law inapplicable to the instant case.
> As the Lenders note in their brief, the Second Circuit's reasoning in *Whiteford Plastics* and *Vintero* accords with the interpretations of §§ 544 and 548 of the Bankruptcy Code, as stated in treatises, legislative history and Second Circuit bankruptcy court opinions. (Lenders' Joint Mem. pp. 22–24.) "The purpose of the trustee's strong-arm powers under § 544 is to vindicate the rights of creditors as a group." DOUGLAS G. BAIRD, THE ELEMENTS OF BANKRUPTCY 100 (Found. Press 1992).
> The legislative history of the current Bankruptcy Code indicates that Congress intended no substantive changes in enacting the new § 544 to replace the old § 70c. *See* S. Rep. No. 95–989 (1978), U.S. Code Cong. & Admin. News 1978, p. 5787 ("Subsection (a) [of § 544] is the 'strong arm clause' of current law, now found in Bankruptcy Act § 70c ...."); *see also* 5 COLLIER ON BANKRUPTCY ¶ 544.LH[1] (Alan N. Resnick et al. eds., 15th ed. Rev. 2007) (explaining that Congress re-enacted § 70c as § 544(a) of the Bankruptcy Code).
> Furthermore, as this Court has noted, rules of statutory construction dictate that courts "will not read the Bankruptcy Code to erode past bankruptcy practice absent a clear indication that Congress intended such a departure." Appeal Decision p. 21 and p. 21, n. 14.
> Bankruptcy courts in this circuit have repeatedly interpreted §§ 544 and 548 in line with *Whiteford Plastics* and *Vintero,* holding that the Bankruptcy Code's avoidance provisions can only be asserted to benefit a creditor of the debtor in question. "[A] transaction can be avoided under section 544(b) only to the extent the avoidance benefits unsecured creditors." *In re Crowthers McCall Pattern, Inc.,* 120 B.R. 279, 288 (Bankr. S.D.N.Y. 1990) (citing *Collier on Bankruptcy,* ¶ 544.03 (15th ed.1989); *Whiteford Plastics,* 179 F.2d at 584).

*Id.* at 94. Elsewhere, the court held:

> The ART also argues in its brief that the Lenders' interpretation of §§ 544 and 548 of the Code wrongly applies § 550's "benefit of the estate" language to these other sections . . . . However, the Court agrees with the Lenders that the cases they cite interpreting § 70c of the Bankruptcy Act, and by extension, §§ 544 and 548 of the Bankruptcy Code, *Whiteford Plastics, Vintero*, and their progeny, interpret § 70c Bankruptcy Act and §§ 544 and 548 of the Code independently of § 550, without reference to § 550's "benefit of the estate" requirement.

*Id.* at 97.

A third case, *Weaver v. Aquila Energy Marketing, Corp.*, found a "benefit to the estate" requirement for a preference action brought by a liquidating trustee to avoid a garnishment lien, even though § 550 was not pled. The court held:

> Here, the language of §§ 547(b) and 550(a) are at odds with bankruptcy law's longstanding principal to refuse to allow a debtor to avoid a lien where only the debtor, not the general creditors, benefit. *See, e.g., Whiteford Plastics Co. v. Chase Nat. Bank of New York City,* 179 F.2d 582 (2d Cir. 1950) (refusing to allow debtor to avoid a defectively recorded lien because only the debtor would benefit, not the general creditors); *see also, e.g., City Nat'l Bank & Trust Co. v. Oliver,* 230 F.2d 686 (10th Cir. 1956) (concurring with *Whiteford's* benefit to the estate analysis). Therefore, a look to the legislative history is necessary.
> The legislative history indicates that the separation of avoidance and recovery principals was intentional. . . .
> In enacting the Code, Congress stated that "[s]ection 550 ... enunciates the separation between the concepts of avoiding a transfer and recovering from the transferee." H.R. Rep. No. 595, 95th Cong., 1st Sess. 375 (1977), reprinted in 1978 U.S.C.C.A.N. pp. 5787, 5963, 6331 ("H.R. Rep. No. 595"). This intent to separate becomes even more apparent when one considers that Congress provided for different statutes of limitations for avoidance. *See* 11 U.S.C. §§ 546(a) and 550(f). Notwithstanding, the Court finds the Trustee's contentions unpersuasive. Under the Act, garnishment liens could be avoided only if avoidance benefitted the estate. In rewriting the avoidance and recovery provisions, Congress was unconcerned with this rule. Instead, Congress enacted the Code's avoidance and recovery provisions to clear up confusion concerning a trustee's right to recover property that was fraudulently transferred and sold to an innocent purchaser, and the procedural difficulties that flow from this scenario. Under the Code, "the particular theory under which a transfer has been avoided is, for all intents and purposes, irrelevant to the liability of the transferee against whom the trustee claims recovery of the property." *Collier 15th* at 550–3.
> In short, § 550 is a rights and liabilities provision, not an affirmative recovery provision. Describing § 550 as an affirmative recovery provision misconstrues the purpose for which avoidance and recover principals were separated and implies that Congress intended a change in the law that it did not.

> Moreover, the Trustee is, in fact, seeking to recover property in this case because he seeks to shift Aquila back to the position of unsecured creditor. The Court noted earlier that with regards to bankruptcy estates, property is defined by state law. Texas law defines property as including security interests. The Trustee's attempt to avoid Aquila's security interest is nothing more than an attempt to recover a property interest. The recovery of any property, or interest in property, must be for the benefit of the estate.
>
> Accordingly, the Court holds that § 550(a)'s "benefit to the estate test" applies when a trustee attempts to avoid a security interest acquired by garnishment lien.

196 B.R. at 954-55 (footnotes omitted). The district court's analysis was affirmed by the Fifth Circuit, which stated:

> The district court expressly rejected the Trustee's textual and structural arguments that § 550(a)'s "benefit to the estate" requirement has no nexus with or bearing on a trustee's independent avoidance powers when an avoidance action under § 547 is not coupled with an affirmative attempt under the aegis of § 550(a) to recover "property transferred" or "the value of such property," but instead simply seeks to avoid a non-possessory judicial lien. . . . [W]e agree with the district court's thoughtful explanation of why the "benefit of the estate" test still must be met in a § 547 avoidance action like the one before us . . . .

117 F.3d 1417, at *6. *See also In re Easthaven Marina Group, LLC*, 2009 WL 703383, at *4 (Bankr. E.D.N.C.) (the bankruptcy court would have limited the debtor's right to use § 544 because avoidance only benefitted debtor, were it not for *In re Coleman*); *In re ASARCO LLC*, 513 B.R. 499, 506 (S.D. Tex. 2012) (court acknowledges that the principles underlying the *Adelphia* decision are true); *In re Refco, Inc. Securities Litigation*, 2010 WL 11712926, at *5 (S.D.N.Y.), adopted by 2010 WL 5129011 (S.D.N.Y.) (acknowledging that fraudulent transfer claims do get dismissed due to a lack of a valid creditor, citing *Adelphia*).

    c.    <u>The Court holds that Plaintiff must demonstrate a benefit to the estate</u>. The Court will follow the *Dunes Hotel/Adelphia/Weaver* line of cases, for several reasons. First, there is no question that under the Act, a trustee or debtor in possession had to demonstrate a benefit to the estate before she could use her avoidance powers. Second, the Supreme Court has repeatedly held that a clear indication is required before concluding that Congress intended to depart from past

bankruptcy practice.[9] The language and legislative history of the Code's avoidance and recovery sections do not evidence a desire to eliminate the "benefit of the estate" rule developed under the Act. Third, it makes no sense to have a "benefit of the estate" limitation for some avoidable transfers but not others. If a trustee must show benefit to the estate to recover a preferential payment of money, why should the rule be different for a late-filed financing statement?[10] Fourth, it seems likely that Congress intended the "benefit of the estate" limitation in § 550 to apply to all avoided transactions, and that Congress simply overlooked the situation (lien avoidance) in which § 550 need not be pled. Fifth, the Court is persuaded by *Weaver's* analysis that granting a security interest actually is a transfer of property, so § 550 should apply.[11] Finally, requiring a benefit to the estate is consistent with the purposes of the Code. Congress had no intention, when it enacted first the Act and then the Code, for the avoiding powers to be used to generate windfalls for debtors. Rather, those powers were given to help creditors collect fairly and equally.

6. <u>What Constitutes a Benefit to the Estate</u>?

---

[9] *See, e.g., Pa. Dept of Pub. Welfare v. Davenport*, 495 U.S. 552, 563 (1990) ("We will not read the Bankruptcy Code to erode past bankruptcy practice absent a clear indication that Congress intended such a departure."); *Dewsnup v. Timm*, 502 U.S. 410, 419 (1992) (to the same effect); *Midlantic Nat'l Bank v. N.J. Dept. of Envtl. Protection*, 474 U.S. 494, 501 (1986) ("The normal rule of statutory construction is that if Congress intends for legislation to change the interpretation of a judicially created concept, it makes that intent specific. *Edmonds v. Compagnie Generale Transatlantique,* 443 U.S. 256, 266–267, 99 S. Ct. 2753, 2759–60, 61 L. Ed. 2d 521 (1979). The Court has followed this rule with particular care in construing the scope of bankruptcy codifications.").

[10] This proceeding is a good illustration of that. The result should not be different for Plaintiff's attempt to avoid the Note Payments and Defendant's security interest simply because § 550 is invoked in one instance but not the other.

[11] The *Weaver* court observed: "By arguing that he is not seeking an affirmative recovery, i.e., that a security interest is not property, the Trustee is attempting to have his cake and eat it too. On the one hand, the Trustee argues that a security interest acquired by garnishment lien is property; therefore, a preferential transfer occurred. On the other hand, he argues that a security interest is not property; therefore, § 550(a)'s benefit to the estate requirement does not apply. These arguments are legally inconsistent." 196 B.R. at 955, n.9.

The question remains whether avoiding Defendant's security interest would benefit the estate. "Whether a particular action provides a windfall for the debtor or a benefit for the estate 'depends on a case-by-case, fact-specific analysis.'" *Dunes Hotel,* 245 B.R. at 509 (quoting *Wellman v. Wellman*, 933 F.2d at 218); *see also* C. Wesley Vines and Vernon O. Teofan, *The Preservation and Prosecution of Avoidance Actions Post-Confirmation*, 12 Bankr. Dev. J. 735, 764 (1996) ("[t]he cases run the gamut from allowing recovery so long as there is 'some benefit,' to requiring that 'any and all proceeds' recovered be paid directly to the former creditors.") (footnotes omitted). The Court should take evidence on the issue and hear arguments of counsel about the proper legal standard.

## Conclusion.

Defendant's security interest in the Collateral is avoidable under § 547(b) unless Plaintiff lacks standing to pursue the claim. Plaintiff's standing hinges, in turn, on whether avoiding the security interest would benefit the estate. Evidence is needed on this latter point, so the Court will deny Plaintiff's summary judgment motion. An order consistent with this opinion will be entered.

_____
Hon. David T. Thuma
United States Bankruptcy Court

Entered: June 11, 2021
Copies to: Counsel of record